UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    **REPORT, RECOMMENDATION
                                             AND ORDER**

v.

MISAEL MONTALVO,                             11-CR-00366-RJA-JJM
CARMEN M. JUSTINIANO RAMIREZ,
EFRAIN HIDALGO, and
BRANDON JONAS,
                        Defendants.
_____

            This case was referred to me by Hon. Richard J. Arcara for supervision of all pretrial

proceedings [6].[1]  Before me are the pretrial motions of defendants Misael Montalvo [127][2],

Efrain Hidalgo [126, 173][3], Carmen M. Justiniano Ramirez [129][4] and Brandon Jonas [172], and the

government's cross-motions for reciprocal discovery.  Oral argument was held on September 17 and

December 3, 2013 [156, 179].

            For the following reasons, the government's cross-motions for reciprocal discovery

are granted and defendants' non-dispositive motions are granted in part and denied in part, and I

recommend that defendants' motions to dismiss the Superseding Indictment and to suppress

identification evidence be denied.

_____

[1]        Bracketed references are to the CM/ECF docket entries.

[2]        Montalvo's motion to suppress statements is addressed in a separate Report and
Recommendation.

[3]        Although Hildago's pretrial motion sought suppression of his November 19, 2004
statements (Hildago's Memorandum of Law [126-1], pp. 20-22 of 23), the government filed a notice
[166] advising that it does not intend to use this statement in its case-in-chief.

[4]        Based on the government's representation that Ramirez was not intercepted on the
wiretaps utilized, the parties agreed at the September 17, 2013 oral argument that her motion to suppress
wiretap evidence ([129], ¶¶58-60) was deemed withdrawn as moot.

**BACKGROUND**

The Superseding Indictment [68][5] charges Montalvo and Ramirez with conspiring, between approximately 2000 and November 19, 2011, to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §846 (id., Count 1).  It also charges Montalvo, Hildago, and Jonas with the November 11, 2004 killings of Nelson and Miguel Camacho through the use of a firearm, in violation of 18 U.S.C. §§924(c)(1)(A)(iii), 924(j)(1), and 2 (id., Counts 2 and 3).

Relevant to some of defendants' pretrial motions, in March 2006 Josue Ortiz pled guilty to committing the murders with which defendants are now charged, and is currently serving a term of imprisonment for these murders.  Transcript of the November 20, 2012 proceedings [115-1], pp. 16-25.  However, the government believes that Ortiz had "zero role" in the murders, and his conviction is being challenged in state court proceedings.  Id., p. 25.  Although Counts 2 and 3 are death penalty eligible offenses, the government has advised that it will not seek the death penalty.  See Government's March 19, 2013 correspondence [95].

**ANALYSIS**

A.     **Defendants' Motions[6]**

1.     **Motions to Dismiss Counts 2 and 3**

Count 2 alleges that:

---

[5]     Although Montalvo and Ramirez  filed pretrial motions directed at the Indictment [43, 48], these motions were superseded by their motions directed at the Superseding Indictment and not incorporated by reference.

[6]     Defendants have each joined in the motions of their co-defendants.  See, e.g., Thompson Affirmation [172], ¶143.  Although the government opposes these requests (see, e.g., Government's Response to Jonas' Pretrial Motion [177], p. 47, Point XVI), I will permit defendants to join in the motions of their co-defendants to the extent the motions are applicable to their case and they have standing to do so.

"On or about November 11, 2004, in the Western District of New York [Montalvo, Hildago, and Jonas], during and in relation to a crime of violence, that is, a violation of [18 U.S.C. §1951(a)], and a drug trafficking crime, that is, a violation of [21 U.S.C. §846], . . . did knowingly and unlawfully use, carry and discharge, and in furtherance of such crimes, did knowingly and unlawfully possess and discharge, a firearm, in violation of [18 U.S.C. §924(c)(1)(A)(iii)], and that, in the course of this violation, the defendants . . . caused the death of a person through use of a firearm, which killing was a murder as defined in [18 U.S.C. §1111], in that the defendants, with malice aforethought, did willfully, deliberately and with premeditation, and did in the perpetration of, and attempt to perpetrate, a robbery, unlawfully kill Nelson Camacho . . . by shooting him with a firearm", all in violation of 18 U.S.C. §§924(c)(1)(A)(iii), 924(j)(1) and 2.

Count 3 arises from the alleged killing of Miguel Camacho, but is otherwise identical to Count 2.

18 U.S.C. §924(c) imposes escalating mandatory minimum periods of incarceration on individuals "who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm".[7]  18 U.S.C. §924(j)(1) enhances the penalties for individuals who, in the course of violating §924(c), commit murder through the use of a firearm.

Defendants seek to dismiss Counts 2 and 3 on the following grounds:

### a.    Federal Jurisdiction/Nexus

Defendants argue that "the Court lacks jurisdiction because there is no indication that the crimes alleged involved or affected interstate commerce in any manner".  Thompson Affirmation [172], ¶6; Johnson Affirmation [126-1], ¶¶16-17; Hildago's Memorandum of Law [126-2], pp. 4-5 of 10.  In response, the government argues that "although a predicate drug

---

[7]      "[T]he term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq)".  18 U.S.C. §924(c)(2).

trafficking crime, or crime of violence, is an element of a 924(j) violation that must be alleged, an indictment is not required to define the elements". Government's Response to Jonas' Motion [177], p. 9. I agree with the government.

The parties do not dispute that the alleged predicate crime of violence, a Hobbs Act violation (18 U.S.C. §1951(a)), contains a commerce element.[8] However, the Superseding Indictment need not allege this element or any other elements of the Hobbs Act violation, since defendants are "not directly charged with [that] underlying offense[ ]". United States v. Barrett, 496 F.3d 1079, 1093-94 (10th Cir. 2007), cert. denied, 552 U.S. 1260 (2008). See also United States v. Randall, 171 F.3d 195, 208 (4th Cir. 1999) ("[T]he government was not required to separately charge or convict the defendants of the §924(c) predicate offense . . . . Nor was the government required to specify a specific §924(c) predicate offense in the §924(c) charge in the indictment").

Jonas also argues that "[a]ccording to the discovery provided by the government and our own independent investigation . . . the robbery alleged did not involve a business dealing in interstate commerce, or any business at all". Thompson Affirmation [172], ¶12. However, this argument is reserved for trial: "[o]nly in the limited circumstance where the government has made a proffer of the evidence it intends to introduce at trial may the court make a pretrial determination as to whether the evidence is sufficient to demonstrate an effect on interstate commerce". United States v. Diallo, 2009 WL 4277163, *2 (S.D.N.Y. 2009). As the government acknowledged at oral argument, "if [it] fail[s] to prove. . . an effect on interstate commerce as to the underlying predicate

---

[8]    18 U.S.C. §1951(a) provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both".

at trial, then it will either be a not guilty or a Rule 29".[9]  *See* <u>United States v. Zhou</u>, 428 F.3d 361,

379 (2d Cir. 2005) ("[B]ecause the commission of the underlying predicate offense is a necessary

element of a conviction under §924(c), both logic and precedent dictate that there must be legally

sufficient proof of the underlying offense").

       Jonas also asserts a commerce clause challenge to the government's reliance on 21

U.S.C. §846 as the predicate drug-trafficking activity.  He argues that since "[t]he offense concerns

the drug dealer's meeting of minds, not their actual possession or distribution of controlled

substances", "the federal interest embodied in the Controlled Substances Act - the regulation of an

illegal economic 'activity' - is  inapplicable".  Thompson Affirmation [172], ¶22.  Jonas contends

that this commerce clause argument is distinguishable from that addressed in <u>United States v.</u>

<u>Genao</u>, 79 F.3d 1333, 1337 (2d Cir. 1996), which rejected a commerce clause challenge to a  21

U.S.C. §846 conviction based on the intrastate nature of the defendant's activities.  However, even

if Jonas' argument is distinguishable from the commerce clause challenge addressed in <u>Genao</u>, it is

premature at this stage since he concedes that "[a]t trial, the government may seek to offer evidence

of actual drug-selling to prove this alleged conspiracy".  Thompson Affirmation [172], ¶22.

       He also argues that "there is not a 'substantive connection' between the murders and

any drug related activity in relation to which the murders are alleged to have been committed".

Thompson Affirmation [172], ¶32.  While Jonas notes that the "substantive connection"

requirement "has been analyzed in the context of murder charges brought under 21 U.S.C.

§848(e)(1)(A)", he cites no cases applying that requirement to a 18 U.S.C. §924(j) prosecution.

---

[9]    This quotation is from the unofficial chamber's transcription of the December 3, 2013
oral argument.

Id., ¶28. In any event, this appears to be an evidentiary challenge, which cannot be resolved on a dismissal motion. *See* Diallo, 2009 WL 4277163, *2.

Jonas' reliance on United States v. Garcia, 143 F.Supp.2d 791 (E.D.Mich. 2000) is also unavailing. In Garcia, the court dismissed a RICO indictment based on an insufficient interstate commerce nexus where the alleged predicate acts for the RICO counts were "based solely on violations of [state] murder statutes". 143 F.Supp.2d at 797. Significantly, the alleged predicate acts did not "include other allegations such as robbery. . . [or] drug trafficking. . . , which are more economic in character". Id. Here, by contrast, the Superseding Indictment alleges that the discharge of the firearm occurred during and in relation to a drug conspiracy, in violation of 21 U.S.C. §846, an activity that affects interstate commerce. *See* United States v. Walker, 142 F.3d 103, 111 (2d Cir.), cert. denied, 525 U.S. 896 (1998) (§846 is "part of the Controlled Substances Act. In enacting this legislation, Congress made specific findings and declarations . . . . [, which] provide a specific, reasonable finding by Congress that local narcotics activity substantially affects interstate commerce").

Jonas further argues that "New York State has the power and authority to prosecute Jonas for the Camachos' murders, just as it previously prosecuted and convicted Josue Ortiz for those murders. Thus, federal jurisdiction cannot be sustained as applied under the facts of this case." Thompson Affirmation [172], ¶30. However, "[w]hen a single act violates the laws of two sovereigns, the wrongdoer has committed two distinct offenses". United States v. Davis, 906 F.2d 829, 832 (2d Cir. 1990).

Hildago further argues that a "drug trafficking crime" cannot serve as a predicate for jurisdiction" against him since he is not named in Count 1 of the Superseding Indictment, which charges a drug conspiracy. Hildago's Memorandum of Law [126-2], p. 3 of 10. However, "[t]he

Superseding Indictment . . . specifically incorporates by reference the allegations of Count 1 (the conspiracy to distribute 5 kilograms or more of cocaine), into the allegations contained in Counts 2-3, and also alleges that liability to defendant Hidalgo may attach pursuant to 18 U.S.C. § 2". Government's Response to Hildago's Pretrial Motions [147], p. 5, n. 1.  Moreover,  "the Government need not actually *charge* Defendant with those predicate offenses in order to convict him under 18 U.S.C. section 924(j)".  United States v. Best, 235 F.Supp.2d 923, 925 n. 3 (N.D.Ind. 2002) (emphasis in original).

Therefore, I recommend that defendants' motions to dismiss Counts 2 and 3 for a lack of federal jurisdiction/nexus be denied.

### b.    Statute of Limitations

Relying on the fact that the conduct alleged in Counts 2 and 3 is alleged to have occurred on or about November 11, 2004, more than five years before the November 8, 2012 Superseding Indictment, Hildago argues that these claims are time-barred.  Hildago's Memorandum of Law [126-2], pp. 2-4 of 10.  I disagree.

18 U.S.C. §3281 provides that "[a]n indictment for any offense punishable by death may be found at any time without limitation".  Defendants are charged with violating 18 U.S.C. §924(j), which is punishable by death.  *See* 18 U.S.C. §924(j)(1).  "It is irrelevant that the United States does not seek the death penalty in this case; it is sufficient that the statutes allegedly violated authorize such a sentence." United States v. Dames, 2007 WL 1032257, *1 (S.D.N.Y. 2007). "Therefore the offenses . . . are not subject to a statute of limitations, regardless of whether the underlying [offenses], if charged separately, would be time-barred." Id. *See* United States v. Hargrove, 2013 WL 4787917, *4  (D.Kan. 2013), appeal dismissed __Fed.Appx.__, 2014 WL

988556 (10th Cir. 2014) ("Section 924(j) does not set forth a discrete crime . . . . But this fact does not mean that it is subject to the five-year statute of limitations of §924(c). Rather, §924(j) increases the punishment of §924(c) and disposes of the statute of limitations" (citing cases)). Accordingly, I recommend that Hildago's motion to dismiss Counts 2 and 3 as being time-barred be denied.

> ### c. Duplicity

Hildago argues that Counts 2 and 3 must be dismissed "on the grounds that 18 U.S.C. §924(c) alleges two separate and distinct crimes in each count, the offense of using or carrying a firearm during and in relation to a crime of violence and the offense of possessing a firearm in furtherance of any such crime, and is thus duplicitous". Johnson Affirmation [126-1], ¶18; Hildago's Memorandum of Law [126-2], pp. 5-7 of 10. Specifically, he argues that when Counts 2 and 3 are read in conjunction with the Notice of Special Findings, which makes clear that Jonas "intentionally killed the victims", it "raises the question of whether the 'discharge' of a firearm under 924(c), as to both the 'use and carry' and the 'possession' offenses should apply only to defendant Jonas and exclude defendants Hidalgo and Montalvo" and that "[r]esort to the allegation of accessory liability, under 18 U.S.C. 2, also does not help to identify what conduct defendant Hidalgo is accused of, as the indictment does not specify whether the defendant is accused as a principal under 18 U.S.C. 2(a) or (b)." Id., p. 6 of 10.

"An indictment is duplicitous if it joins two or more distinct crimes in a single count." United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992). "Circuits are currently split as to whether §924(c) creates two separate offenses." United States v. Jackson, 513 Fed.Appx. 51, 54 (2d Cir.) (Summary Order), cert. denied, 133 S.Ct. 1848 (2013). Although the Second Circuit has

not yet specifically determined "whether section 924(c) creates multiple offenses" (id.), courts in this Circuit have rejected similar challenges, concluding that "using, carrying, and brandishing a firearm are merely three means of committing a violation of 18 U.S.C. §924(c)". Johnson v. United States, 2013 WL 103174, *6 (S.D.N.Y. 2013). *See* United States v. Barret, 2011 WL 6780901, *3 (E.D.N.Y. 2011) (same).[10]

   The Second Circuit has also suggested that it would reach a similar conclusion. *See* Jackson, 513 Fed. Appx. at 54 ("Although we do not reach the question of whether section 924(c) creates multiple offenses, we have held that '[w]here there are several ways to violate a criminal statute . . . federal pleading requires . . . that an indictment charge [be] in the conjunctive to inform the accused fully of the charges. A conviction under such an indictment will be sustained if the evidence indicates that the statute was violated in any of the ways charged.'" *quoting* United States v. Mejia, 545 F.3d 179, 207 (2d Cir. 2008)).

   In any event, even if these counts could be construed as being duplicitous, "[d]uplicity . . . is only a pleading rule and would in no event be fatal to the count". United States v. Droms, 566 F.2d 361, 363 n.1 (2d Cir. 1977). "Rather, the appropriate remedy is to require the government, prior to trial, to elect between the duplicitous charges." United States  v. Campbell, 2013 WL 3805666, *6 (W.D.N.Y. 2013) (Geraci, J./Payson, M.J.). Therefore, I recommend that Hildago's motion to dismiss Counts 2 and 3 on duplicity grounds be denied.

---

   [10]  Although the government cites to United States v. Lindsay, 985 F.2d 666 (2d Cir.), cert. denied, 510 U.S. 832 (1993), that case addressed a different issue. In Lindsay, the court concluded that "the appropriate unit of prosecution [for a 18 U.S.C. §924(c) violation] to be the underlying drug-trafficking offense, not the separate firearms. Only where the defendant commits multiple drug-trafficking crimes or violent crimes, and the government can link the firearms to those crimes . . . , may the government prosecute for multiple violations of §924(c)(1). Where the government links multiple firearms to a single crime, only one § 924(c)(1) violation occurs." Id., 674.

2.      **Motions to Suppress Identifications**

"If there is a very substantial likelihood of irreparable misidentification [from a pretrial identification] . . . the judge must disallow presentation of the evidence at trial." Perry v. New Hampshire, __ U.S.__, 132 S.Ct. 716, 720 (2012).  Determining whether the witness will be permitted to "identify the defendant at trial normally requires a one-step or two-step inquiry.  The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt.  If they were not, the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification.  In that circumstance, any question as to the reliability of the witness's identifications goes to the weight of the evidence, not its admissibility." United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990), cert. denied, 501 U.S. 1211 (1991).  However, "[i]f the pretrial procedures were unduly suggestive, the analysis requires a second step; the court must then weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures." Id.[11]

"[T]he Constitution does not require trial courts to hold pretrial hearings concerning the suggestiveness of an identification procedure." United States v. Ruggiero, 824 F.Supp. 379, 396 (S.D.N.Y. 1993), aff'd, 44 F.3d 1102 (2d Cir. 1995) (citing Watkins v. Sowders, 449 U.S. 341, 349 (1981)).  See United States v. Archibald, 734 F.2d 938, 940 (2d Cir. 1984) (the defendant was not "deprived of due process by the district court's exercise of its discretion in not holding a pretrial hearing on the issue of suggestiveness. No per se rule requires such a hearing" (emphasis omitted)).

_____

[11]      "[T]he Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." Perry, 132 S.Ct. at 730.

To be entitled to a hearing to determine the admissibility of identification testimony, the defendant must "set[ ] forth facts which, if proven, would entitle him to the relief sought".  United States v. McGee, 2000 WL 1520957, *14  (W.D.N.Y. 2000) (Elfvin, J./Foschio, M.J.) (citing United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir.1969), cert. denied, 396 U.S. 1019 (1970)).  See United States v. Williams, 2014 WL 144920, *1  (S.D.N.Y. 2014) ("Significantly, a defendant may not baldly request . . . a Wade hearing.  To be entitled to a hearing, a defendant must instead allege facts supporting his contention that the identification procedures used were impermissibly suggestive.  A 'threshold showing' of suggestiveness is necessary in order to trigger a Wade hearing" (internal quotations omitted)); United States v. Morris, 2014 WL 1041309, *3 (S.D.N.Y. 2014) ("[B]ecause Defendant has failed to make a threshold showing of suggestiveness, there is no need for an evidentiary hearing"); United States v. Swain, 2011 WL 4348142, *7 (S.D.N.Y. 2011) ("Where, as here, Defendant's suggestion of impropriety in the presentation of a photo array is mere speculation, a pretrial hearing into the identification procedures is not warranted").  "In the absence of a sufficient pre-trial showing of impropriety, exploration of the circumstances surrounding the identification procedures may be properly left to cross-examination at trial."  United States  v. Salomon-Mendez, __ F.Supp.2d__,  2014 WL 201524, *2 (S.D.N.Y. 2014).

In determining whether a photo array is suggestive, "the principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit".  Jarrett v. Headley, 802 F.2d 34, 41 (2d Cir. 1986).  "A photo array is improperly suggestive if the photograph of the accused in the array differs significantly from others in the array."  McGee, 2000 WL 1520957 at *14 (emphasis added).  "The manner in which an

identification is conducted may also be unduly suggestive." Swain, 2011 WL 4348142, *7

(S.D.N.Y. 2011).

        The government has produced for my *in camera* review eight photographic arrays,

and a report of interview dated May 7, 2012 of a witness that identified Montalvo and Jonas,

from a book of photographs of males predominately from the west side of Buffalo.[12]  The

government represents that redacted copies of these materials were provided to the defendants.

Government's September 23, 2013 letter attaching the photo arrays.

        Having examined the photo arrays used in the eight alleged identifications, I find that

the arrays are not impermissibly suggestive.  Each of the photo arrays contain similarly sized

photographs of six individuals.  The other individuals pictured in each of the  arrays have

characteristics similar to each defendant in terms of age, facial characteristics, hair, and facial hair.

The photo arrays also each contain written instructions advising the witnesses that the "photographs

may or may not contain a picture of the person who committed the crime now being investigated.

Keep in mind that hair styles, beards and moustaches may be easily changed.  Also, photographs

may not depict the true complexion of a person".  *See* United States v. Dames, 380 F.Supp.2d 270,

277 (S.D.N.Y. 2005) (concluding that a non-suggestive photo array with written instructions

demonstrated that the pretrial identification procedure was not unduly suggestive).

        I will now address each of the defendants' arguments.

---

[12]    No party specifically addresses the alleged identification referenced in the report of interview.

### a.    Jonas

Jonas was allegedly identified on August 16, 2012 from a photo array and allegedly on May 7, 2012 from a book of photographs of males from the west side of Buffalo. Without identifying any particular identification, Jonas seeks to suppress identification evidence as being "unnecessarily suggestive and conducive to a substantial likelihood of irreparable misidentification". Thompson Affirmation [172], ¶¶131-33.[13]  Likewise, without identifying any specific identifications, the government states that "some identifications were merely confirmatory, and were impervious to suggestion". Government's Response to Jonas' Pretrial Motions [177], p. 41.

Jonas' generalized argument that unspecified pretrial identifications were unduly suggestive are insufficient to warrant a pretrial Wade[14] hearing.   Therefore, I recommend that his motion to suppress the photographic identification be denied.  "[T]he reliability of the identification evidence can be ensured through the 'time-honored process of cross-examination'   'the device best suited to determine the trustworthiness of testimonial evidence.'" Ruggiero, 824 F.Supp. at 397 (*quoting* Watkins v. Sowders, 449 U.S. at 349).

### b.    Hildago

Hildago was allegedly identified in photo arrays on July 7, 2011, August 16, 2012, and December 27, 2012.  The government represents that the July 7, 2011 and August 16, 2012 identifications "were merely confirmatory identifications which are impervious to

---

[13]    Jonas also seeks production of  unredacted copies of the photo arrays Thompson Affirmation [172], ¶134) or, in the alternative, that I review the unredacted arrays *in camera* (id., ¶135). Since I have reviewed the unredacted photo arrays *in camera*, this aspect of Jonas' motion is denied.

[14]    United States v. Wade, 388 U.S. 218 (1967).

suggestion".  Government's Response to Hildago's Pretrial Motions [147], p. 27, Point 9.  Hildago

proffers no facts indicating that these identifications were suggestive, explaining that since the

witness names have been redacted, he is unable to discover the circumstances of the identification

procedures.  Hildago's Memorandum of Law [126-2], p. 8 of 10.

   This is insufficient to establish his entitlement to an evidentiary hearing.  *See*

Williams, 2014 WL 144920 at *2 (denying an evidentiary hearing where the defendant provided

"no facts that provide the context for the circumstances surrounding the alleged out of court

identification[s]" and asked "for a hearing to develop a factual record 'from which this Court may

divine the appropriateness of the identification procedure[s] employed'"); Dames, 380 F.Supp.2d at

276 (concluding that "Dames has made no threshold showing of suggestiveness", where his motion

stated, *inter alia*, "Dames is without sufficient information to know what if any unduly suggestive

identification procedures may have been employed by law enforcement officers in obtaining an

identification of the defendant as one of the perpetrators of the charged offenses"); United States  v.

Volpe,  42 F.Supp.2d 204, 223 (E.D.N.Y. 1999) ("Where a defendant's motion is based entirely on

speculation as to how the procedures used in the identification might have been suggestive, and does

not challenge the arrays themselves, a pre-trial hearing is not appropriate").  "While I can appreciate

the difficulties defendants face in discovering whether improper procedures were followed in cases

such as this where neither counsel nor their clients were present to view the interaction between the

officers and the witnesses, I believe that their suspicion of improprieties may be adequately tested

through cross-examination at trial."  United States v. Padilla, 1994 WL 681812, *8 (S.D.N.Y.

1994).

   Hildago also argues that the lapse of time between the crime, which allegedly

occurred on November 11, 2004, and the identifications approximately seven or eight years later,

erodes their reliability. Hildago's Memorandum of Law [126-2], pp. 7-9 of 10. "Nonetheless, absent any factual assertions alleging the use of unduly suggestive identification procedures, determinations as to the reliability of the Identifying Witness and his or her identification of the suspect are questions of credibility for the jury that are best pursued and argued on cross-examination." Dames, 380 F.Supp.2d at 277 (rejecting that the almost ten-year time lag between the alleged witnessing of the event and the pretrial identifications warranted a pretrial Wade hearing). *See also* Ruggiero, 824 F.Supp. at 396 (Since the defendant "failed to make any showing that the procedures used were suggestive, and because any questions concerning the reliability of witnesses' identifications can be properly raised on cross-examination, no pretrial hearing is required"). Therefore, I conclude that Hildago has not established his entitlement to a pretrial hearing, and recommend that his motion to suppress the photographic identifications be denied.

       **c.**      **Montalvo**

       Montalvo was allegedly identified on January 27, June 18, August 5, and August 12, 2012 from photo arrays and on May 7, 2012 from a book of photographs of males predominately from the west side of Buffalo.[15] Unlike Jonas and Montalvo, who each seek suppression, Montalvo only requests "[a] hearing to determine that the photo array was conducted in compliance with all rights afforded to the accused". Spitler Affidavit [127-1], ¶18(c).[16] Montalvo's

---

[15]    The government's response to Montalvo's initial motion also indicated that "[o]n or about November 13, 2011, a confidential informant confirmed the identity of the defendant from a photo". Government's Memorandum of Law [46], p. 74. However, this identification is not specifically addressed by Montalvo, who only addresses the photo arrays.

[16]    Montalvo also seeks disclosure of when and where the identifications occurred and the individuals present. (Spitler Affidavit [127-1], ¶¶18(a), (b). In response, the government states that he "has been provided information regarding identification procedures during voluntary discovery, and in its

counsel states: "I have reviewed photo arrays provided by the government and find same to be improper because of the facial composition of the fill-ins." Id.

As discussed above, I conclude that none of the photo arrays from which Montalvo was allegedly identified are suggestive. Nor is Montalvo's request for a hearing to determine the circumstances of the identifications sufficient to warrant an evidentiary hearing. *See* Williams, 2014 WL 144920 at *2. Therefore, I deny Montalvo's motion for a pretrial Wade hearing.

### d.    Ramirez

Unlike her co-defendants, Ramirez does not seek suppression of her alleged photographic identification. Instead, she seeks production of a photograph allegedly used for a confirmatory identification of her and "a description of the circumstances which lead the Government to assert that this was a 'confirmatory identification'". Housh Declaration [129], ¶¶17-19. At oral argument, the government agreed to provide her with a better quality copy of the photograph used for the identification and described the circumstances of the alleged identification. Therefore, this motion is denied as moot, without prejudice.

### 3.    Motion to Strike the Special Findings

Jonas moves to strike the Notice of Special Findings contained in the Superseding Indictment. Thompson Affirmation [172], ¶¶33-35. The government responds that since the Attorney General has authorized and directed that the death penalty not be sought in this case that "in compliance with the District Court's local practice, [it] will submit a redacted indictment for the

---

prior responses". Government's Response to Montalvo's Pretrial Motion [146], p. 15.

District Court to utilize at trial".  Government's Response to Jonas' Pretrial Motions [177],  p. 16, Point II.  Based upon the government's representation, this is denied as moot.


    **4.**    **Motions for Fed. R. Crim. P. ("Rule") 16 Discovery and Rule 12 Notice**

        The government states that it has "provided complete voluntary discovery pursuant to Rule 16, and has advised defendants of its intention to utilize at trial all evidence the defendant has been provided, or made aware of, pursuant to Rule 12".  Government's Response to Montalvo's Pretrial Motions [146], p. 12.  It also states that it "intends to continue to comply with the requirements of Rule 16".  Id.  Notwithstanding these representations and an acknowledgment by some of the defendants that "many discoverable items" have been produced (Housh Declaration [29], ¶5), defendants seek certain items not previously produced.

        Apart from the government's Brady,[17] Giglio,[18] and Jencks Act (18 U.S.C. §3500) obligations, which are addressed separately, "Rule 16 is . . .  the sole authorized vehicle under the Federal Rules of Criminal Procedure for pre-trial discovery in criminal cases".  United States v. Louis, 2005 WL 180885, *2 (S.D.N.Y. 2005).  Therefore, I will individually address the categories of discovery permitted by Rule 16.


    **a.**    **Defendants' Statements**

        With respect to each defendant, the government states that it "believes it has disclosed the defendant's statements to law enforcement personnel".  *See, e.g.*, Government's Response to Ramirez's Pretrial Motions [148], p. 7.  In addition, the government states that it has

---

[17]    Brady v. Maryland, 373 U.S. 83 (1963).

[18]    Giglio v. United States, 405 U.S. 150 (1972).

produced copies of Hildago's statements in the form of jail recordings. Government's Response to Hildago's Pretrial Motions [147], p. 16. Hildago also seeks his grand jury testimony (Johnson Affirmation [126-1], ¶39(d)), but the government represents that "no such information exists as the defendant did not testify before the Grand Jury". Government's Response to Hildago's Pretrial Motions [147], p. 16.

Apart from their own statements, Jonas and Ramirez request "disclosure of the statements of any alleged coconspirators that the government may seek to introduce at trial pursuant to F.R.E. 801(d)(2)(E)". Thompson Affirmation [172], ¶130; Housh Declaration [129], ¶10. Jonas "further requests . . . that the Court hold a pretrial conspiracy hearing to assess the foundation for the introduction of any such statements made by alleged coconspirators, permitting the defense to seek suppression . . . if appropriate". Thompson Affirmation [172], ¶130. The government responds that "[c]o-conspirator statements are not discoverable pursuant to Rule 16" and "the admissibility of such co-conspirator statements is a matter for the District Court to determine at the time of trial". Government's Response to Jonas' Pretrial Motions [177], pp. 40-41. I agree with the government.

"Rule 801(d)(2)(E) is a provision which defines whether certain statements are to be considered 'hearsay.' This provision does not provide for the *disclosure* of such statements. . . . The Jencks Act provides the exclusive procedure for discovering statements that government witnesses have given to law enforcement agencies." United States v. Busch, 2013 WL 3759944, *3 (W.D.N.Y. 2013) (Scott, M.J.) (emphasis in original). Moreover, "[t]he defendants are not entitled to a pretrial hearing to determine the admissibility of coconspirator statements . . . . . Instead, in this circuit the judge presiding over the trial of the case makes a ruling pursuant to U.S. v. Geaney, 417

-18-

F.2d 1116 (2d Cir.1969) during the trial regarding the admissibility of the statements." Id.

Therefore, these motions are denied, without prejudice to renewal before Judge Arcara.[19]

### b.   Prior Criminal Record

For those defendants that have requested their prior criminal records, the government

states that it has provided such records. *See, e.g.*, Government's Response to Hidalgo's Pretrial

Motions [147], p. 17.  Based on this representation, these requests are denied as moot, without

prejudice.

### c.   Documents and Objects

The government states that it "has voluntarily provided, and will make available, all

documents and objects within the scope of Rule 16(a)(1)(E)" and "acknowledges its continuing

obligation to provide discovery material".  Government's Response to Hildago's Pretrial Motions

[147], p. 17.

Although Ramirez and Jonas seek a number of investigative reports (Housh

Declaration [129], ¶¶24-29; Thompson Affirmation [172], p. 37 ("Any notes memoranda,

summaries, reports or statements of any kind prepared by agents or the government"), Rule 16(a)(2)

exempts from disclosure "reports, memoranda, or other internal government documents made by an

attorney for the government or other government agent in connection with investigating or

prosecuting the case".  Indeed, Ramirez acknowledges that "Rule 16 literally exempts many [of the

---

[19]      At the December 3, 2013 oral argument the government agreed to produce the sworn
statement of Carlos Osario (if any) referenced in Court Exhibit A2 [180], p. 2 of 2.

documents he seeks] from disclosure".  Housh Declaration [129], ¶29. Therefore, these requests are denied, without prejudice.

### d.    Reports of Examinations and Tests

The government states that it "has disclosed, or will disclose, all materials that are discoverable under [Rule] 16(a)(1)(F), and that are in the possession of the government, to defense counsel".  Government's Response to Ramirez's Pretrial Motions [148], p. 8.  It also states that "[i]f any additional items exist or are later produced within the purview of Rule 16(a)(1)(F), the government will produce such items voluntarily".  Government's Response to Montalvo's Pretrial Motions [146], pp. 20-21.  Based on this representation, these requests are denied as moot, without prejudice.

### e.    Expert Witnesses

Defendants seek "a list of the government's expert witnesses, if any, and the substance of any reports from these witnesses that may be in their possession, as well as written summaries of their anticipated testimony".  Housh Declaration [129], ¶57.  In its response, the government states that it " has forensic laboratory reports of seized controlled substances, firearms, DNA and fingerprints, and [it] believes it has complied with [Rule] 16(a)(1)(G) and Fed. R. Evid. 702, 703, and 705".  Government's Response to Ramirez's Pretrial Motions [148], pp. 8-9.  The government also "reserves the right to offer the testimony of other expert witnesses", and if it decides to do so, it agrees to "fully comply with [Rule] 16(a)(1)(G) and Fed. R. Evid. 702, 703, and 705".  Id., p. 9.  Based on these representations, these requests are denied as moot, without prejudice.

5.    **Motions for Bills of Particulars**

Rule 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense". United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). "[T]he burden is upon defendants to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendants' rights". United States v. Duarte, 2014 WL 29366, *1 (W.D.N.Y. 2014) (Scott, M.J.).

"In deciding a motion for a bill of particulars, the important question is whether the information sought is necessary, not whether it is helpful." United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense". United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

The court "has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form". United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). See United States v. Messina, 2012 WL 463973, *10 (E.D.N.Y. 2012) ("In determining whether a defendant has shown such necessity, the trial court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery"). "Whether to grant a bill of particulars rests within the sound discretion of the district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

### a.    Count 1

Neither Montalvo nor Ramirez make any specific arguments as to why particularization is necessary.  Spitler Affidavit [127-1], ¶¶5-6; Housh Declaration [129],  ¶4.  Montalvo and Ramirez's generalized assertion of need is insufficient to establish their entitlement to a bill of particulars.  A "claim that the information should be provided so that [the defendant] may 'defend herself' does not constitute the 'particularized showing of need' that is required in this circuit to warrant an order directing the government to submit a bill of particulars. [The defendant] does not allege, for example, that the language of the indictment is so vague that she does not have adequate notice of the charges against her."  United States v. Gonzalez, 1994 WL 689065, *2 (S.D.N.Y. 1994).  They also fail to cite any case law supporting their  entitlement to a bill of particulars.  Under these circumstances, their motions for bills of particulars concerning Count 1 are denied.

In any event, much of what defendants seek, including "[h]ow the co-defendants. . . knowingly, willfully and unlawfully combined, conspired, and agreed together to commit the acts set forth in the Indictment" (Spitler Affidavit [127], ¶6(c), a "[l]ist of the uncharged overt acts taken" (id., ¶6(d)), whether persons acting for the government were present during the overt acts (id., ¶6(e)),  the dates the defendants joined and withdrew from the alleged conspiracy (id., ¶6(g)), "the name of all individuals from whom the government alleges Defendant distributed cocaine" (Housh Declaration [129], ¶4(a)), "[t]he exact . . . quantity of controlled substances alleged to be in possession of Defendant . . . during the alleged conspiracy" (id., ¶4(b)),  and "the exact number of times Defendant . . . distributed controlled substances during the alleged conspiracy" (id., ¶4(c)), are not the proper subject of a bill of particulars.

"[D]emands for particulars regarding the formation of a conspiracy have almost universally been denied.  Matters such as the exact time and place of the overt acts and names of the persons present are not properly the subject of a bill of particulars." United States v. Tejada,  108 F.Supp.2d 137, 140 (N.D.N.Y. 1999).  Although the alleged conspiracy is alleged to have continued for approximately eleven years, the defendants are not in the dark as to the allegations against them.  In addition to the discovery provided, the government's proffer at Montalvo's November 20, 2012 detention hearing  ([115-1], pp. 7-10), the Criminal Complaint [1], and Search Warrant application for Montalvo's vehicle [44-2]  provide details of the alleged conspiracy.

### b.     Counts 2 and 3

Montalvo, Hildago and Jonas seek particularization of Count 2 and 3 of the Superseding Indictment.  Spitler Affidavit [127-1], ¶¶5-6; Johnson Affirmation [126-1], ¶¶24-37; Thompson Affirmation [172], ¶¶76-90.  In response, the government argues that it has produced over 1,500 pages of discovery and that "virtually the only significant items which have not been provided voluntarily consist of grand jury transcripts and statements of witnesses".  Government's Response to Hildago's Pretrial Motion [147], pp. 12-15.  When this ample discovery is coupled with the allegations of Counts 2 and 3 of the Superseding Indictment, which are limited to a single day, and the detailed proffer the government made of its case against these defendants at Montalvo's detention hearing  ([115-1], pp. 10-23), defendants have been  sufficiently apprised of the charges against them to permit them to adequately prepare for trial.  Therefore, defendants' motions for bills of particulars concerning Counts 2 and 3 of the Superseding Indictment are denied.

6.        **Motions for Production of Grand Jury Transcripts**

Relying on Rule 6(e), Jonas moves for disclosure of "the testimony of all witnesses who appeared before the grand jury in connection with this indictment". Thompson Affirmation [172], ¶36.[20]  He argues that disclosure is necessary since "there was insufficient legal evidence to support the charges on each individual count and, in the event that evidence before the grand jury was legally sufficient to sustain the charges, to permit the Court and the defendant to determine the actions for which the defendant was indicted, to protect against double jeopardy and to permit meaningful appellate review of any conviction". Id.  Alternatively, he requests that the court "review the grand jury minutes in camera and dismiss the indictment based on insufficient evidence before that body". Id., ¶39.

"The burden is on the party seeking disclosure to show a *particularized need* that outweighs the need for secrecy." In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996) (emphasis added).  Jonas' speculative arguments fail to meet that standard. *See* United States v. Gonzalez, 2008 WL 3914877, *6 (S.D.N.Y. 2008) ("A defendant's mere speculation as to what occurred in front of the grand jury does not warrant inspection of the minutes, either by disclosure to defense counsel or through *in camera* inspection by the Court").  Moreover, "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence". United States v. Calandra, 414 U.S. 338, 345 (1974).

To the extent that Jonas seeks this information to assist in his preparation for trial (Thompson Affirmation [172], ¶40), there are  means short of obtaining the grand jury transcripts, such as voluntary discovery, that will permit him to adequately prepare for trial.  Moreover, the

---

[20]        At oral argument the government agreed to produce the federal grand jury testimony of Josue Ortiz.  Therefore, this aspect of Hildago's motion (Johnson Affirmation [126-1], ¶¶57-58) is denied as moot.

"transcripts of grand jury testimony of witnesses called by the government to testify at trial must be made available to the defendant pursuant to and in accordance with the provision of 18 U.S.C. §3500".  United States v. Mehta, 2013 WL 1878903, *10-11 (W.D.N.Y. 2013) (Schroeder, M.J.). Therefore, this motion is denied, without prejudice.


### 7.    Motions for Relief from Joinder and Severance

Jonas and Hildago move for severance of Counts 2 and 3 of the Superseding Indictment and Jonas also moves for severance of his case from the cases against his co-defendants. Thompson Affirmation [172], ¶¶41-75; Johnson Affirmation [126], ¶¶19-23.  A decision on this motion is "left to the discretion of the District Judge to whom the case is assigned".  United States v. McCabe, 2013 WL 6081719, *6 (W.D.N.Y. 2013) (Schroeder, M.J.) (deferring a motion for severance of counts and defendants to the trial judge).  Therefore, these motions are denied, without prejudice to renewal before Judge Arcara.


### 8.    Motions for Brady/Giglio Material

"[A]s a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant."  United States v. Coppa, 267 F.3d 132, 146 (2d Cir. 2001).  "[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."  Id. at 144.  See United States v. Morgan, 690 F.Supp.2d

274, 285-86 (S.D.N.Y. 2010) ("[C]ourts in this Circuit have repeatedly refused to compel

disclosure of impeachment or Giglio material well in advance of trial").[21]

The government states that it "believes that it has complied with its Brady

obligations in this matter" and "[t]o the extent that additional Brady and impeachment material

becomes known to the government, such information will be disclosed sufficiently in advance of the

proof during the trial for the information to be effectively useful to the defendant". Government's

Response to Hildago's Pretrial Motions [147], pp. 20-21.

Much of the specific Brady material defendants seek center on Josue Ortiz. *See*, *e.g.*,

Johnson Affirmation [126-1], ¶¶46-68; Thompson Affirmation [172], ¶99. However, the

government represents that it has produced certain materials related to Ortiz's prosecution pursuant

to its Brady obligations. Government's Response to Jonas Pretrial Motion [177], p. 32. At the

September 17, 2013 oral argument the government acknowledged that it is in possession of certain

Giglio material in the form of Ortiz's medical records, but represented that these materials would be

produced if Ortiz testifed at trial. Defendants have not established their immediate entitlement to

these materials. *See* United States v. Murgas, 967 F.Supp. 695, 716 (N.D.N.Y. 1997) ("While

defendants have requested immediate disclosure of such material, Giglio material is akin to Jencks

Act material, and therefore, need not be disclosed until the witness testifies"). [22]

---

[21] Although Jonas also relies upon the ABA Standards for Criminal Justice in moving for exculpatory evidence (Thompson Affirmation [172], ¶98), "the rule in . . . in Brady . . . requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate." Kyles v. Whitley, 514 U.S. 419, 437 (1995).

[22] At oral argument Hildago's counsel advised that he had been thwarted in his efforts to obtain records from the state court related to Ortiz's motion pursuant to NY CPL §440.10 to vacate his judgment of conviction. Any requests to modify the sealing and/or protective orders related to that case should be made to the appropriate court.

In light of the government's "good-faith representation to the court and defense counsel that it recognizes and has complied with its disclosure obligations under Brady", United States v. Perez, 940 F.Supp. 540, 553 (S.D.N.Y.1996), and its specific recognition of its Brady/Giglio obligations arising from Ortiz's prosecution, defendants' motions for production of Brady/Giglio materials are denied, without prejudice.

 

9.      **Motions for Early Disclosure of Jencks Act Material**

Defendants move for early disclosure of Jencks Act material. Thompson Affirmation [172], ¶112; Housh Declaration [129], ¶10.[23]   They argue that since "the government's case appears to be built largely, if not exclusively, on the testimony of cooperating witnesses who have not been identified" an adequate opportunity to prepare for cross-examination is necessary since "[c]ommonly such witnesses have significant criminal histories . . . and other information bearing on the reliability and credibility of their testimony".  Thompson Affirmation [172], ¶114.

However, as noted by the government, it is not required to disclose Jencks Act material until after the witness testifies on direct examination at trial.  Government's Response to Jonas' Pretrial Motions [177], p. 39.  See Coppa, 267 F.3d at 145 (the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements"); Morgan,  690 F.Supp.2d at 286  ("Courts in this Circuit have consistently held that district courts lack the power to mandate early production of Jencks Act material"); United States v. Exolon  Esk Co., 1995 WL 46719, *3 (W.D.N.Y.1995) (Skretny, J.) ("it is . . . uniformly recognized that a district court generally lacks

---

[23]      Whereas Jonas seeks disclosure of Jencks Act material at least two months before trial, Ramirez seeks it not less than 48 hours before trial.

authority to order pretrial production of Jencks materials over an objection by the government"). Therefore, defendants' motions for early disclosure of Jencks Act material are denied.

In any event, the government is willing to follow the practice in this court of the trial court setting a deadline for such disclosures, but reserves its right to "withhold witness identity and Jencks material until after the witness testifies at trial if it determines that such early disclosure will increase the likelihood of witness intimidation". Government's Response to Jonas' Pretrial Motions [177], pp. 38-39, Point XI.

10.    **Motions for Disclosure of Informants and Witnesses and for Production of Unredacted Materials**

Defendants seek disclosure of informant identities and a witness list. *See* Housh Declaration [129], ¶¶15-17; Johnson Affirmation [126-1], ¶¶69-74; Spitler Affidavit [127-1], ¶¶7-8. Jonas also alleges that the government has produced over 100 pages of reports with identifying information of witnesses redacted, thereby prohibiting him from identifying these witnesses and investigating their anticipated testimony. Thompson Affirmation [172], ¶102. He seeks the production of unredacted copies of these reports or, in the alternative, a hearing to address whether redaction is justified. Id., ¶101.[24]

In Roviaro v. United States, 353 U.S. 53, 60-61 (1957), the Supreme Court held that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a

---

[24]    The government states that it has produced to Montalvo a redacted version of an unidentified sealed search warrant affidavit (presumably in support of the search warrant for his vehicle) to protect the identity of an active confidential informant. Government's Response to Montalvo's Pretrial Motions [146], p. 13. However, Montalvo's motion does not specifically seek production of an unredacted version of this affidavit nor does he seek to suppress any search warrants.

cause, the [informant's] privilege must give way". The government states unlike Roviaro, this "is

not a tipster case", "[i]n this case, [its] witnesses . . . will testify and be subject to cross

examination." *See, e.g.,* Government's Response to Hildago's Pretrial Motions [147], p. 24.

Therefore, it argues that Roviaro "does not generally apply". Id. "A number of circuits have

adopted the rule that pretrial disclosure of informants' identities is not necessary when they will

testify at trial." United States v. Hargrett, 1996 WL 551090, *6 (N.D.N.Y. 1996) ("This court

agrees with these authorities, that when no more particularized need for disclosure is averred by

defendant, the testimony of a confidential informant at trial obviates the need for pretrial

disclosure"). *See* United States v. Leonard, 817 F.Supp. 286, 302 (E.D.N.Y. 1992) ("[T]he

government has indicated that the confidential informant will testify at trial, and that defendants will

have access to all impeachment material regarding this witness in advance of trial . . . . Based on

the government's intention to call the informant at trial, disclosure of the confidential informant's

identity is not warranted"). Coupled with the fact that the informants in this case will testify,

defendants have not demonstrated a particularized need for disclosure. While they argue that the

informants in this case were participants in the alleged crimes (Johnson Affirmation [126-1], ¶72;

Housh Declaration [129], ¶15), a defendant must show more than that "the informant was a

participant in and witness to the crime charged". United States v. Saa, 859 F.2d 1067, 1073 (2d

Cir. 1988), cert. denied, 489 U.S. 1089 (1989).

    Moreover, "[a]s a general rule, the Government is not under any obligation to

disclose the identities of witnesses well in advance of trial." United States v. Shteyman, 2011 WL

2006291, *8 (E.D.N.Y. 2011). However, "a trial court has the discretion to compel the disclosure of

the identity of government witnesses where there has been a particularized showing of need."

United States v. Perryman, 2013 WL 4039374, *8 (E.D.N.Y. 2013) (*citing* United States v.

Cannone, 528 F.2d 296, 300  01 (2d Cir.1975)).  "In determining whether to exercise its discretion,

the trial court needs to balance the defendants' specific need for the material against the possible

dangers accompanying disclosure (i.e. subornation of perjury, witness intimidation, and injury to

witnesses)." Id.  "To that end, district courts in this Circuit have looked to the following factors:

> (1) Did the offense alleged in the indictment involve a crime of
> violence? (2) Have the defendants been arrested or convicted for
> crimes involving violence? (3) Will the evidence in the case largely
> consist of testimony relating to documents (which by their nature are
> not easily altered)? (4) Is there a realistic possibility that supplying the
> witnesses' names prior to trial will increase the likelihood that the
> prosecution's witnesses will not appear at trial, or will be unwilling to
> testify at trial? (5) Does the indictment allege offenses occurring over
> an extended period of time, making preparation of the defendants'
> defense complex and difficult? (6) Do the defendants have limited
> funds with which to investigate and prepare their defense?" Id., *9

The government argues that immediate disclosure of the witnesses in this case is not

warranted since the charges "involve extreme violence", which "demonstrates that [defendants]

could pose a potential danger . . . to anyone who might be a witness".  Government's Response to

Jonas' Pretrial Motions [177], p. 33.  Although Jonas points that there have been no specific

allegations by the government  of concern for witness safety (Thompson Affirmation [172], ¶106),

the government  explains that it does "not share information regarding any ongoing investigations

into witness tampering, or threats, with the defendant".  Government's Response to Jonas' Pretrial

Motions [177], p. 37, n. 10.

Given the nature of the charges in this case, coupled with the government's

representation that disclosure could pose a potential danger to the witnesses in this case, disclosure

of witnesses is not warranted at this time.  As the government argues, "disclosure of government

informant(s), witnesses, identity, impeachment material, etc., should properly be addressed through

the Brady and Jencks Act materials which will be provided to the defendant in advance of trial

consistent with the District Court's pre-trial order". Government's Response to Hildago's Pretrial Motions [147], p. 26.

Jonas also seeks the identification of favorable witnesses. Thompson Affirmation [172], ¶129. To the extent this constitutes <u>Brady</u> material, it shall be produced consistent with the government's <u>Brady</u> obligations and representations. *See* <u>United States v. Patel</u>, 2002 WL 1750948, *3 (N.D.Ill. 2002) ("[T]o the extent that any request for witness lists seeks the identities of persons who can provide information favorable to the accused which is material to guilt or innocence, the Government must furnish Patel with the identities of those persons under <u>Brady</u>"); <u>United States v. Messino</u>, 855 F.Supp. 955, 967 (N.D.Ill. 1994) ("To the extent defendants' requests for witnesses seek disclosure of the identities of persons who can provide information favorable to the accused which is material to guilt, the government must furnish the defendant with the identities of these persons pursuant to <u>Brady</u>").

Alternatively, Jonas seeks that I review the unredacted materials *in camera* or direct the production of the unredacted materials pursuant to an attorney's eyes only protective order. Thompson Affirmation [172], ¶¶106, 109; Housh Declaration [129], ¶17. However, I see little reason to do so, since Jonas concedes that "in many cases it is possible by comparing and contrasting the information already provided to assign a likely identity to an individual whose information has been redacted". Thompson Affirmation [172], ¶41. Ramirez also seeks that I conduct an *in camera* review of the informants "to evaluate the competing interests in such disclosure". Housh Declaration [129], ¶17. However, having failed to sufficiently articulate grounds warranting such review, this request is also denied. *See* <u>United States v. Monge</u>, 2012 WL 1900363, *11 (W.D.N.Y. 2012) (Schroeder, M.J.) (denying a similar request for *in camera* review).

11.    **Motion to Exclude Statements of Non–Testifying Co–Conspirators pursuant to Bruton.[25]**

Montalvo moves to "bar the admission into evidence of all post-arrest statements by non-testifying co-conspirators/co-defendants which may implicate him in any way".  Spitler Affidavit [127-1], ¶4.  The government responds that "it does not believe that any co-defendant statements will implicate the Bruton rule".  Government's Response to Montalvo's Pretrial Motions [146], p. 6.   The "[r]esponsibility for determining whether declarations of an alleged conspirator should be admitted against another rests on the shoulders of the trial judge". United States v. Mastropieri, 685 F.2d 776, 787  88 (2d Cir.), cert. denied, 459 U.S. 945 (1982). *See* United States v. Anguiera, 2012 WL 1232096, *1 (W.D.N.Y.2012) (Scott, M.J.) ("the relief sought for excluding non-testifying co-conspirators statements . . . [is] better considered by the District Judge prior to trial and are deferred for that consideration"); Busch,  2013 WL 3759944, *3 ("[C]hallenges to the admissibility of a statement under [Bruton] are more appropriately determined by the presiding District Judge at trial").  Therefore, Montalvo's motion is denied, without prejudice to renewal before Judge Arcara.

12.    **Motion for Preservation of Evidence and Rough Notes**

Jonas moves for the preservation of evidence and rough notes. Thompson Affirmation [172], ¶121.  Although the government responds that it has no objection to government agents retaining notes taken during the investigation of this case (government's Response to Jonas' Pretrial Motions [177], p. 40), it makes no representations concerning the preservation of evidence. Therefore, I grant this motion and  "[t]he government is directed to preserve all rough notes and

---

[25]        Bruton v. United States, 391 U.S. 123(1968).

items of evidence". United States v. Coates, 2013 WL 3897484, *5 (W.D.N.Y. 2013) (Scott,

M.J.).[26]


13.    Motions for Production of Fed.R.Evid. 404(b), 608 and 609 Evidence

Defendants seek notice of evidence the government will seek to introduce at trial

pursuant to Fed. R. Evid. 404(b), 608 and 609. See Johnson Affirmation [126-1], ¶91; Thompson

Affirmation [172], ¶¶117-20, 136-37, 142; Housh Declaration [129], ¶56; Spitler Affidavit [127-1],

¶¶22-23. Jonas also seeks to preclude use of "prior criminal charges or convictions". Thompson

Affirmation [172], ¶138.

The government responds that it "will disclose evidence in its possession which

might fall within the ambit of Fed. R. Evid. 404(b), 607, 608 and 609, and will provide notice of its

intention to rely upon such evidence at the time it is ordered to do so by the trial court".

Government's Response to Montalvo's Pretrial Motions [146], p. 22. Notwithstanding its

agreement to provide these materials, the government states that it has no obligation to provide a

defendant with any information that could be used to impeach that defendant pursuant to Fed. R.

Evid. 608, should that defendant elect to testify. Id. I agree with the government. See United States

v. Barnett, 2009 WL 1044559, *2 (W.D.N.Y. 2009) (Scott, M.J.) ("The government has no

obligation to provide the defendants with notice of any material that will be used to impeach him

pursuant to Rule 608 should he elect to testify"). Based on the government's representation,

defendants' motions are denied as moot. See United States v. Newton, 2009 WL 2876169, *6

(W.D.N.Y.2009) (Schroeder, M.J.). Any issues concerning the admissibility of evidence pursuant

---

[26]    Although the government argues that "even if retained, rough notes are not discoverable,
even as Jencks Act material" (government's Response to Jonas' Pretrial Motions [177], p. 40), Jonas has
moved only for the retention of these notes, not their production.

-33-

to Fed. R. Evid. 404(b), 608 and 609 are "best left to the determination of the trial judge at the time of trial". United States v. Navarro-Gonzalez, 2013 WL 1625404, *2 (W.D.N.Y. 2013) (Schroeder, M.J.).

**14.    Motions for Leave to File Additional Motions**

Defendants move for leave to file additional motions. *See*, *e.g.*, Housh Declaration [129], ¶19; Thompson Affirmation [172], ¶¶91-96, 144-47 (Jonas attributes his inability to file all necessary suppression motions on the government's failure to provide a Rule 12 notice). These motions are denied, without prejudice to the possibility of additional motions in the future, upon a showing of good cause for why they were not timely asserted. *See* Rule 12(e).

**B.    Government's Cross-Motions for Reciprocal Discovery**

The government moves for reciprocal discovery pursuant to Rule 16(b). *See, e.g.*, Government's Response to Ramirez's Pretrial Motions [148], pp. 23-24. Defendants have not opposed this request. Therefore, the government's motion is granted. "Defendant[s] shall provide such discovery, if any, not later than 30 days prior to trial or such other date as the District Judge may direct." United States v. Sikut, 488 F.Supp.2d 291, 304-05 (W.D.N.Y.2007) (Foschio, M.J./Arcara, J.).

**CONCLUSION**

For these reasons, the government's cross-motions for reciprocal discovery are granted and defendants' non-dispositive motions are granted in part and denied in part, and I recommend that defendants' motions to dismiss and to suppress identification evidence be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by May 5, 2014 (applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

-35-

Dated: April 16, 2014                    /s/ Jeremiah J. McCarthy
                                         JEREMIAH J. MCCARTHY
                                         United States Magistrate Judge